New York v. PVS Chemicals, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 10th day of September, two thousand nineteen.

Present:     ROSEMARY S. POOLER,
             BARRINGTON D. PARKER,
             REENA RAGGI,
                     *Circuit Judges*.

_____

STATE OF NEW YORK,

                 *Plaintiff-Counter-Defendant-Appellant*,

          v.                                              18-2537-cv

PVS CHEMICALS, INC. (NEW YORK),

                 *Defendant-Counter-Claimant-Appellee*.

_____

Appearing for Appellant:     Frederick A. Brodie, Assistant Solicitor General (Timothy Hoffman, Assistant Attorney General, Victor Paladino, Assistant Solicitor General, *on the brief*), *for* Letitia A. James, Attorney General of the State of New York, Albany, N.Y.

Appearing for Appellee:     David L. Roach, Roach, Lennon & Brown, PLLC (J. Michael Lennon, *on the brief*), Buffalo, N.Y.

Appeal from the United States District Court for the Western District of New York (Schroeder, *M.J.*).

   **ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **REVERSED** and the case **REMANDED** to the district court with instructions to enter judgment for the State of New York.

   Appellant the State of New York appeals from the July 30, 2018, judgment of the United States District Court for the Western District of New York (Schroeder*, M.J.*) granting PVS Chemicals, Inc. (New York)'s ("PVS's") motion for dispute resolution and precluding New York from requiring PVS to remediate environmental conditions which existed when the parties entered a 2002 Consent Decree with PVS (the "Consent Decree"). *New York v. PVS Chems., Inc.*, 324 F. Supp. 3d 352, 365 (W.D.N.Y. 2018). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

   A panel of this court previously held that the Consent Decree at issue in this case is ambiguous regarding whether New York may require PVS to implement a groundwater and soil remediation program based on evidence of contamination that existed in 2002. *New York v. PVS Chems., Inc. (New York)*, 589 F. App'x 10, 11 (2d Cir. 2014) (summary order). We remanded the case for the sole purpose of allowing the district court to consider extrinsic evidence in determining the parties' intent with respect to the ambiguous provision. *Id.* Thus, the only issue before us is whether the extrinsic evidence permits New York to require PVS to implement corrective measures to remediate pollution that New York was aware of before agreeing to the Consent Decree. New York now appeals the district court's decision after reviewing the extrinsic evidence that New York may not require PVS to remediate environmental conditions of which it was aware when it entered the Consent Decree.

   "We review the district court's interpretation of a consent decree de novo, and its factual findings for clear error." *United States v. Broad. Music, Inc.*, 275 F.3d 168, 175 (2d Cir. 2001). The proper interpretation of an ambiguous contract based on extrinsic evidence as to the parties' intent "is a question of fact for the factfinder." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009).

   The record belies the district court's factual findings regarding the parties' intent in entering the Consent Decree. The record reveals that from the beginning of settlement negotiations, New York and PVS were committed to reaching a settlement that comprehensively addressed the alleged environmental contamination at the PVS site. App'x at 813 (letter from New York informing PVS that "it is essential that PVS make a firm commitment from the outset to undertake and complete this sequential process for addressing the State's concerns regarding groundwater and related environmental resources"); App'x at 825 (meeting notes from a PVS representative stating, "NYS [New York State] is not willing to negotiate pieces of this, is looking at the whole parcel. We are following this same path"). In accord with this stated goal, New York's first draft of the Consent Decree required PVS to "implement selected corrective measures at the facility" to alleviate groundwater and soil contamination. App'x at 838.

PVS then objected to the Consent Decree's requirement that it implement the corrective measures, stating that it would negotiate remedial measures only "[i]f there [was] a basis for [Resource Conservation and Recovery Act] claims or remedies *as indicated by the data generated by the proposed Investigation*." App'x at 1104 (emphasis added). New York responded that it would permit PVS to make a "proposed change that limits defendant's commitment to performance of a site investigation in accordance with an approved site investigation work plan," only if the change were "accompanied by a corresponding limited release." App'x at 1127. Specifically, "[t]he State would reserve its rights to proceed against defendant for any liability that may result from the State's determination that further measures are required, and defendant would reserve its rights to defend." App'x at 1127. The final Consent Decree reflects this agreement.

This drafting history demonstrates that New York was unwilling to settle with PVS unless it could retain its right to pursue PVS for groundwater and soil remediation at the PVS site, including such remediation as was warranted by the agreed-to investigation. Nothing in the drafting history or in the Consent Decree itself reveals New York's agreement to limit the contamination on which it could pursue PVS for remediation to contamination discovered through the required investigative studies. Despite PVS's arguments to the contrary, New York agreed only that it would decide whether to seek further remediation efforts "after review of the reports," JA 33—it did not agree to relinquish its rights to pursue remediation efforts on the basis of pre-existing information. This reservation provided no time limitation during which New York needed to assess the investigative report and decide whether to pursue further action; neither did the reservation require that the study find a threshold amount of contamination before New York could pursue such further action.

On the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (internal quotation marks omitted). We therefore reverse the judgment of the district court and direct the district court to enter judgment in favor of New York.

The judgment of the district court hereby is REVERSED and the case is REMANDED to the district court with instructions to enter judgment for the State of New York.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

3